Arlington HELBING, Jr., Appellant,

v.

**TEXAS DEPARTMENT OF WATER RESOURCES, et al., Appellees.**

**No. 14572.**

Court of Appeals of Texas, Austin.

June 25, 1986.

Jerry M. Keys, Brown, Maroney, Rose, Barber & Dye, Austin, for appellant.

Jim Mattox, Atty. Gen., Ginny Agnew, Asst. Atty. Gen., Austin, for appellee, Texas Dept. of Water Resources.

Earnest Casstevens, Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, for appellee, Crockett County Water Control and Imp. Dist. No. 1.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant, Arlington Helbing, Jr., seeks to set aside the judgment of the Travis County district court which affirmed an order of the Texas Water Commission (formerly the Department of Water Resources) authorizing discharge of certain wastewater.

Appellee, Crockett County Water Control and Improvement District No. 1, provides domestic sewage treatment services for persons in Ozona and the surrounding area. The Commission granted the District's application for a permit authorizing wastewater discharge from its proposed new treatment plant located near Ozona. The discharge point of the wastewater is in John-

son Draw, less than a half-mile from Helbing's ranch.

Although Helbing complained of the final site of the new plant, he initially proposed its location on his land in exchange for use of the wastewater to irrigate his pasture grass. The District, however, rejected Helbing's proposal due to the high cost of constructing and operating the irrigation equipment.

The District's new plant will consist of a gravity flow line extending to a lift station which, in turn, will pump the sewage to a series of three oxidation ponds with discharge ultimately in Johnson Draw.

The Commission's order authorizes the District to discharge wastewater into "Johnson Draw; thence to Devil's River in Segment 2309 of the Rio Grande Basin." The discharge area "is in a very wide gentle sloping draw covered with native grasses, mesquite and other trees" and is "typical West Texas." Johnson Draw is dry, except for occasional storm runoff and discharge from the existing facility.

Agency regulations at the time of the administrative hearing provided that the Commission could not approve any wastewater discharge which would result in a reduction of the quality of state waters below certain standards. 31 TAC § 333.11 et seq. The Commission determined in finding of fact fourteen that state waters would not be degraded by water discharged from the District's new plant.[1] Helbing's first point of error is that the district court erred in sustaining the Commission's order because finding of fact fourteen is not supported by substantial evidence.

Because the agency's finding is presumed to be supported by substantial evidence, it was Helbing's burden to overcome that presumption. *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752 (Tex.1966). To set aside the agency's finding, Helbing had the burden

---

1. We observe that many of the Commission's regulations concerning surface water are hardly appropriate when applied to the gullies and arroyos in the dry and stony lands of West Texas.

to demonstrate that the evidence, as a whole, was such that reasonable minds could not have made the finding. *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946). Substantial evidence need not be much evidence, and although "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. Reavley, *Substantial Evidence and Insubstantial Review in Texas*, 23 Sw.L.J. 239 (1969). If there existed substantial evidence which would have supported either an affirmative or negative finding, the agency's finding is entitled to be given full effect. *Texas Aeronautics Commission v. Braniff Airways, Inc.*, 454 S.W.2d 199 (Tex.1970).

Helbing's specific complaint centers on two of the general criteria in Commission Rule 156.4.01.005 (31 TAC § 333.15):

(1) Taste and odor producing substances shall be limited to concentrations in the waters of the state that will not ... *result in offensive odors arising from the waters*, or otherwise interfere with the reasonable use of the waters.

(2) The surface waters of the state shall be maintained so as to be essentially free of floating debris and suspended solids conducive to the production of *putrescible sludge deposits or sediment layers which would adversely affect ... any lawful use.*

(Emphasis added.)

Helbing insists that there is no substantial evidence that the discharge will comply with these criteria and not degrade state waters. In support of his position, Helbing points to the definite testimony of his expert that the discharge from the sewage plant will pool in Johnson Draw and will cause odors.

■ The District relies heavily upon the testimony of its expert, Gary Haner, to establish compliance with the water quality standards:

Q. Do you have an opinion as to whether the proposed discharge will result

in a deterioration of Segment 2309 of the Rio Grande Basin?

A. In my opinion it will not.

The District also asserts that certain testimony by Michael Tomme, supervisor of the Department's Permits Division, provides substantial evidence that the discharge will comply with the water quality standards. Tomme testified as follows:

Q. What kinds of resource materials do the people under your supervision rely upon when they're reviewing an application?

A. Primarily on the various rules of the department, the design criteria for sewage systems, the effluent standards for domestic waste water treatment plants, the general permit processing rules, the *surface water quality standards.*

Q. In your review did you determine that, in fact, the permit was prepared in accordance with the various rules and regulations and procedures that you've described already?

A. Yes, I do.

(Emphasis added.)

It is true that Haner's testimony concerning the absence of deterioration in water quality from the discharge and Tomme's testimony concerning the District's compliance with water quality standards was somewhat ambiguous. Also, both Haner's and Tomme's testimony was conclusory. Helbing, however, did not object to the conclusory nature of the testimony nor did he attempt to explore the scope of the testimony on cross-examination. Helbing failed to demonstrate that Haner's testimony did not extend to Johnson Draw or that the testimony did not encompass compliance with all of the surface water quality standards, including those prohibiting odors and sludge deposits. The fact that Haner's and Tomme's testimony may have been in the nature of a "composite fact" or conclusion does not deny it probative force. *Gonzales County Savings and Loan Ass'n v. Lewis*, 486 S.W.2d 176 (Tex.Civ.App.1972, writ ref'd n.r.e.); *Dilger v. Dilger*, 271 S.W.2d 169,

171 (Tex.Civ.App.1951, no writ); *Alstan Corp. v. Bd. of Administrators of Chimney Corners Townhouses,* 713 S.W.2d 130 Tex.App.—Austin 1986. "Where an unimpeached witness states a fact as of his own knowledge, it must be taken that he had competent means of information and knowledge of the fact, unless the contrary appears." *Kottwitz v. Bagby,* 16 Tex. 656, 662 (1856). The first point of error is overruled.

By his second point of error, Helbing claims that the district court erred in affirming the Commission's certification that the discharge permit met federal standards. More specifically, Helbing states that nothing in the record demonstrates that the discharge permit complies with the federal "anti-backsliding" requirement. 40 C.F.R. § 122.44(*l*)(1).

This provision provides as follows:

In addition to the conditions established under § 122.43(a), each NPDES permit shall include conditions meeting the following requirements when applicable....

*(1) Reissued Permits.*

(1) Except as provided in paragraph (*l*)(2) of this section *when a permit is renewed or reissued,* interim limitations, standards or conditions which are at least as stringent as the final limitations, standards, or conditions in the previous permit (unless the circumstances on which the previous permit was based have materially and substantially changed since the time the permit was issued and would constitute cause for permit modification or revocation and reissuance under § 122.62).

40 C.F.R. § 122.44(*l*)(1). (Emphasis added.)

As the emphasized language plainly states, the provision applies only to permit renewals. The Commission found in fact finding number eleven that the permit under consideration "was for a new treatment plant located at a new location and was not a renewal of an existing permit for an existing treatment plant." Helbing has not challenged finding of fact eleven by point

of error and, accordingly, this Court accepts the facts stated therein as established. Moreover, the finding is plainly warranted by the evidence. Point of error two is overruled.

The judgment is affirmed.